**In re MERRILLVILLE SURGERY CENTER, LLC, Debtor.**

**Kenneth A. Manning, Plaintiff,**

v.

**The Methodist Hospitals, Inc., Defendant.**

**Bankruptcy No. 10–20005. Adversary No. 12–2002.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

June 27, 2012.

---

Matthews S. Johns, Robert H. Lang, Lead Attorney, Thompson Coburn, LLP, Chicago, IL, for Plaintiff.

Gordon E. Gouveia II, Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin LLC, Chicago, IL, for Defendant.

## RECOMMENDATION OF THE BANK-RUPTCY COURT PURSUANT TO N.D.IND.L.R. 200.1(b)(1)(C)

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

On April 19, 2012, the defendant The Methodist Hospitals, Inc. ("Methodist") filed its Defendant's Motion to Withdraw the Reference ("Withdrawal Motion"). The response by the plaintiff, Kenneth A. Manning as Chapter 7 Trustee of the bankruptcy estate of Merrillville Surgery Center, LLC [case number 10–20005] ("Trustee") was filed on May 11, 2012, and Methodist's reply was filed on May 25, 2012. This recommendation is submitted to the United States District Court pursuant to N.D.Ind.L.R. 200.1(b)(1)(C).

Methodist's request for withdrawal of the reference is based upon two assertions. The first is that the defendant is entitled to a jury trial with respect to the claims

for relief raised by the complaint; that the United States Bankruptcy Court for the Northern District of Indiana is not authorized to conduct jury trials; and that therefore, withdrawal of the reference pursuant to 28 U.S.C. § 157(d) must be granted. The second basis is that the United States Bankruptcy Court for the Northern District of Indiana lacks Constitutional authority to adjudicate the matters addressed by this adversary proceeding, in light of the decision of the United States Supreme Court in *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

■ With respect to the first assertion regarding conducting of a jury trial, this court concurs with both the plaintiff and the defendant that the defendant is entitled to a jury trail concerning the fraudulent conveyance claims in the complaint, pursuant to *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Also, because Methodist has not filed a proof of claim, the implicit holding of *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) would appear to entitle Methodist to a jury trial on the 11 U.S.C. § 547 preference claim. The United States Bankruptcy Court for the Northern District of Indiana cannot conduct jury trials, and therefor reference should be withdrawn to the United States District Court on this basis alone. This Court would encourage the United States District Court to evaluate Methodist's motion first on this ground alone: if it is determined that this basis for withdrawal of the reference is valid, the United States District Court should then refrain from what would become an advisory opinion concerning the other basis for withdrawal of the reference asserted by Methodist.

*Stern v. Marshall* essentially came out of the blue. The "core" issue (no pun intended, of course) addressed by that decision is whether 28 U.S.C. § 157(b)(2)(C)—stating that "counterclaims by the estate against persons filing claims against the estate" are *ipso facto* "core proceedings" which give the United States Bankruptcy Courts final judgment authority to the extent that authority has been accorded them by the United States District Court—exceeds Congress' Constitutional authority to impart final judgment authority on United States Bankruptcy Courts. *Stern* has generated a nationwide constipation of case processing delays due to litigants' sitting on the withdrawal of reference seat of assertion, which action itself has in large part been generated by a constant stream of intellectual diarrhea-like commentary *(oxymoron intended)* and analysis as to the implications of *Stern.* *Stern* has been viewed as **incredibly** ambiguous by nearly every bankruptcy professional—scholars, counsel for parties, and judges—who has reviewed it and attempted to apply its determination to address a bankruptcy court's final judgment authority in a number of different circumstances. The case has spawned a spectrum of interpretation with respect to a United States Bankruptcy Court's final judgment authority over matters which previously were taken as a "given" for that court, including at its most extreme analytical expansion any matter or case involving the application of state law to obtain final determination.

The direct holding of *Stern,* with which no one can reasonably disagree, is that a counterclaim by the debtor/bankruptcy estate against an entity/person which/who filed a claim against the estate is not *ipso facto* a "core proceeding" under 28 U.S.C. § 157(b)(2)(C) which *by its nature as a counterclaim* imparts final judgment authority to a United States Bankruptcy Court. The rest is up in the air. This Court does not deem it to be appropriate

to embark on a detailed analysis of *Stern* in the context of this recommendation. Ultimately, the jurisdiction afforded to United States Bankruptcy Courts after *Stern* will be decided by United States District Courts, United States Courts of Appeal, and perhaps ultimately by the United States Supreme Court. However, it may be instructive to recite the very discrete aspects of the case.

1. The claim at issue was a counterclaim filed by a debtor in an adversary proceeding against a creditor who had filed a proof of claim asserting damages for defamation against the debtor, and who had filed the adversary proceeding against the debtor to determine an exception to discharge with respect to the alleged defamation.

2. The counterclaim asserted an action for damages for tortious interference with the debtor's expectancy interest of a gift from her then-deceased husband, by exercising undue influence over the decedent.

3. The tortious interference claim was a claim for relief under state law which had not been clearly delineated by the state's highest court, particularly as to whether or not the debtor's theory of recovery even stated a claim under state law. Thus, whether or not the debtor had an interest under state law which could give rise to a claim which might form the basis for relief was *entirely subject* to ill-defined state law; there was no federal substantive issue involved in the debtor's counterclaim.

4. The creditor consented to the bankruptcy court's exercise of final judgment authority with respect to his defamation claim. The bankruptcy court granted summary judgment to the debtor, as a final judgment; the creditor did not appeal the result on Constitutional grounds; and the Supreme Court did not substantively address this aspect of the case in its decision.

5. The creditor did not consent to the bankruptcy court's exercise of final judgment authority on the debtor's counterclaim.

6. The bankruptcy court exercised final judgment authority under 28 U.S.C. § 157(b)(2)(C), deeming the counterclaim to be a core proceeding with respect to which consent to its final judgment authority was not required.

7. The claim asserted by the debtor in the counterclaim was not a claim of the nature "arising under title 11" or "arising in a case under title 11". In the vernacular of classifying claims under 28 U.S.C. § 157(a), the claim was at most "related to a case under title 11". Thus, absent the automatic treatment of the counterclaim as a core proceeding provided by 28 U.S.C. § 157(b)(2)(C), the provisions of 28 U.S.C. § 157(c) would have applied to the counterclaim. As noted, because the creditor had not consented to the bankruptcy court's exercise of final judgment authority under this provision, the bankruptcy court could only have acted under 28 U.S.C. § 157(c)(1) in this context by submitting proposed findings of fact and conclusions of law to the district court for review and final judgment determination.

8. The majority decision in *Stern* dealt only with the **exercise of final judgment authority** under 28 U.S.C. § 157(b)(2)(C) **under the circumstances of the case.** The decision **VERY CLEARLY LIMITED** its scope, and very clearly left intact the bankruptcy court's Constitutional authority to act under 28 U.S.C. § 157(c), stating at the conclusion of the majority opinion the following:

> Finally, Vickie and her *amici* predict as a practical matter that restrictions on a bankruptcy court's ability to hear and finally resolve compulsory counterclaims

will create significant delays and impose additional costs on the bankruptcy process. See, *e.g.*, Brief for Petitioner 34–36, 57–58; Brief for United States as *Amicus Curiae* 29–30. It goes without saying that "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *INS v. Chadha*, 462 U.S. 919, 944, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

In addition, we are not convinced that the practical consequences of such limitations on the authority of bankruptcy courts to enter final judgments are as significant as Vickie and the dissent suggest. See *post*, at 2630. The dissent asserts that it is important that counterclaims such as Vickie's be resolved "in a bankruptcy court," and that, "to be effective, a single tribunal must have broad authority to restructure [debtor-creditor] relations." *Post*, at 2628, 2629 (emphasis deleted). But the framework Congress adopted in the 1984 Act already contemplates that certain state law matters in bankruptcy cases will be resolved by judges other than those of the bankruptcy courts. Section 1334(c)(2), for example, requires that bankruptcy courts abstain from hearing specified non-core, state law claims that "can be timely adjudicated[ ] in a State forum of appropriate jurisdiction." Section 1334(c)(1) similarly provides that bankruptcy courts may abstain from hearing any proceeding, including core matters, "in the interest of comity with State courts or respect for State law." As described above, the current bankruptcy system also requires the district court to review *de novo* and enter final judgment on any matters that are "related to" the bankruptcy proceedings, § 157(c)(1), and permits the district court to withdraw from the bankruptcy

court any referred case, proceeding, or part thereof, § 157(d). Pierce has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. Brief for Respondent 61. We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one. Brief for United States as *Amicus Curiae* 23.

If our decision today does not change all that much, then why the fuss? Is there really a threat to the separation of powers where Congress has conferred the judicial power outside Article III only over certain counterclaims in bankruptcy? The short but emphatic answer is yes. A statute may no more lawfully chip away at the authority of the Judicial Branch than it may eliminate it entirely. "Slight encroachments create new boundaries from which legions of power can seek new territory to capture." *Reid v. Covert*, 354 U.S. 1, 39, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (plurality opinion). Although "[i]t may be that it is the obnoxious thing in its mildest and least repulsive form," we cannot overlook the intrusion: "illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure." *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 29 L.Ed. 746 (1886). We cannot compromise the integrity of the system of separated powers and the role of the Judiciary in that system, even with respect to challenges that may seem innocuous at first blush.

\* \* \*

Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, *in one isolated respect,* exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim. Accordingly, the judgment of the Court of Appeals is affirmed. (emphasis supplied)

*Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 2619–2620, 115 L.Ed.2d 720 (1991).

■ 9. The Court notes that the plaintiff's claims in adversary proceeding 12–2002 solely involve the Trustee's utilization of 11 U.S.C. § 544, § 547 and § 548 to recover from a non-creditor of the debtor. Utilization of the avoidance provisions of Chapter 5 of the United States Bankruptcy Code has traditionally been viewed as constituting a civil proceeding arising under Title 11, because the statutory premises for such an action are provided exclusively by Title 11. *Stern very clearly does not implicate this type of action.* Viewed in this manner, the United States Bankruptcy Court would have final judgment authority with respect to the matters addressed by the adversary complaint. The argument advanced by Methodist would appear to potentially seek to *entirely divest* the United States Bankruptcy Court from exercising any authority whatsoever with respect to any claim or matter advanced against a non-creditor of a debtor in a bankruptcy case, or even a creditor which has not filed a proof of claim.

An increasingly exponentially multiplying number of federal court decisions have

addressed *Stern,* resulting in different theories as to its scope, and as to the implications arising from that scope on the processing of cases by the United States Bankruptcy Courts. These divergent theories result from analytically *projected* views of certain of the issues addressed by the *Stern* majority decision as the reasons for that decision, onto substantive issues not at all addressed by *Stern.* This court falls within the strict constructionist, limited reading of *Stern* camp, an interpretation which this court deems to be clearly directed by the above-quoted statements at the end of the majority opinion. In the context of Methodist's motion for withdrawal of the reference, in this court's view, this court would have final judgment authority with respect to the claims advanced by the plaintiff, without even the requirement of the parties' consent to do so: There would be no viable basis to withdraw reference under Methodist's second theory.

This court expresses its concerns to the United States District Court that said Court's decision on the *Stern* issue may have *significant* ramifications with respect to proceedings and issues which have heretofore been deemed to be within the final judgment authority of the United States Bankruptcy Court for the Northern District of Indiana, or at minimum within the recommendatory authority of the United States Bankruptcy Court for the Northern District of Indiana pursuant to 28 U.S.C. § 157(c)(1). Frankly, this court is not a "turf defender" in this context, and if it is determined that this court does not have Constitutional authority, so be it—it's that much less work that I have to do with respect to matters before me, and that many more cases which the District Court must exclusively handle. Clearly, a determination on Methodist's Withdrawal Motion to the "nth degree" apparently es-

poused by that motion will result in a significant increase in the workload of the United States District Court with respect to matters that were otherwise previously dealt with by the United States Bankruptcy Court.

■ Finally, this court expresses its views on the plaintiff's suggestion that if the reference is withdrawn, this court should still perform all pretrial functions in the case, in essence packaging the case to the District Court for trial. First, as Methodist notes, there may well be issues as to the manner of determination of a motion to dismiss, summary judgement motions, or perhaps any matter which involves the issuance of an appealable order—which argue against any involvement by this court. But more importantly, in this court's view, withdrawal of reference means all matters involved in the case are withdrawn to the District Court, leaving the United States Bankruptcy Court with no further authority with respect to the case whatsoever. Either the United States Bankruptcy Court has at minimum the recommendatory authority provided by 28 U.S.C. § 157(c)(1) concerning final case disposition, or it has no authority whatsoever to deal further with anything in the case. 28 U.S.C. § 151 states that bankruptcy judges constitute a *"unit* of the district court"; the focus of that phrase is **unit,** not adjunct—i.e., the United States Bankruptcy Court is a separately administered court and not a court which serves a function parallel to United States Magistrate Judges with respect to cases exclusively in the District Court. *Stern* itself recognizes this distinction, stating:

Vickie additionally argues that the Bankruptcy Court's final judgment was constitutional because bankruptcy courts under the 1984 Act are properly deemed "adjuncts" of the district courts. Brief for Petitioner 61–64. We rejected a

similar argument in *Northern Pipeline,* see [*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*] 458 U.S. [50] at 84–86, 102 S.Ct. 2858 [73 L.Ed.2d 598 (1982) ] (plurality opinion); *id.,* at 91, 458 U.S. 50, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment), and our reasoning there holds true today.

To begin, as explained above, it is still the bankruptcy court itself that exercises the essential attributes of judicial power over a matter such as Vickie's counterclaim. See *supra,* at 2610. The new bankruptcy courts, like the old, do not "ma[k]e only specialized, narrowly confined factual determinations regarding a particularized area of law" or engage in "statutorily channeled factfinding functions." *Northern Pipeline,* 458 U.S., at 85, 102 S.Ct. 2858 (plurality opinion). Instead, bankruptcy courts under the 1984 Act resolve "[a]ll matters of fact and law in whatever domains of the law to which" the parties' counterclaims might lead. *Id.,* at 91, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment).

In addition, whereas the adjunct agency in *Crowell v. Benson* [285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ] "possessed only a limited power to issue compensation orders ... [that] could be enforced only by order of the district court," *Northern Pipeline, supra,* at 85, 102 S.Ct. 2858, a bankruptcy court resolving a counterclaim under 28 U.S.C. § 157(b)(2)(C) has the power to enter "appropriate orders and judgments"— including final judgments—subject to review only if a party chooses to appeal, see §§ 157(b)(1), 158(a)-(b). It is thus no less the case here than it was in *Northern Pipeline* that "[t]he authority—and the responsibility—to make an informed, final determination ... remains with" the bankruptcy judge, not the district court. 458 U.S., at 81, 102

S.Ct. 2858 (plurality opinion) (internal quotation marks omitted). *Given that authority, a bankruptcy court can no more be deemed a mere "adjunct" of the district court than a district court can be deemed such an "adjunct" of the court of appeals.* We certainly cannot accept the dissent's notion that judges who have the power to enter final, binding orders are the "functional [ ]" equivalent of "law clerks[ ] and the Judiciary's administrative officials." *Post,* at 2627. And even were we wrong in this regard, that would only confirm that such judges should not be in the business of entering final judgments in the first place. (emphasis supplied)

111 S.Ct., at 2618–2619.

Because of my view as to lack of any continuing authority of the United States Bankruptcy Court to perform any function in a case in which reference has been withdrawn, I will go so far as to state that if I were to be directed by the District Court to perform a Magistrate Judge-like role in a withdrawn case, I would respectfully decline to do so.

Summarizing the foregoing, the United States Bankruptcy Court for the Northern District of Indiana states as its recommendation the following:

A. If the United States District Court should determine that Methodist is entitled to a jury trial with respect to any issue or claim in adversary proceeding 12–2002, the United States District Court should withdraw the reference with respect to the entire case, rather than merely withdrawing the reference with respect to the issue or issues to which Methodist is entitled to a jury trial.

B. If the United States District Court determines that withdrawal of the reference is required pursuant to the jury trial issue, the United States District Court should refrain from any discussion of the alternative basis for withdrawal advanced by Methodist.

C. If the United States District Court deems it necessary to discuss the Constitutional limitations of the final judgment authority of the United States Bankruptcy Court, this Court cautions all parties involved to be very careful as to the ramifications of that decision in light of the fact that *Stern v. Marshall, supra.,* is deemed by many to be ambiguous, and is the subject of a just-beginning, very lengthy process of ultimate definition.